Nott, J.,
dissenting:
This, probably, is the hardest case that has been before the court since that of Pratt. (3 C. C1s. R., 105.) Four citizens place their vessel in the service of the government upon the faith of a valid charter at an agreed compensation. After she has been in service eighteen months an order issues from the Quartermaster General’s office on the 9th September, 1863, directing that the compensation be reduced twenty per cent. It is retroactive in terms, and directs that the reduction take effect from the 1st August preceding, or that the boat be discharged. The quartermaster at New York neglects to notify the owners of the reduction until they come for their pay on the 8th October. The owners refuse the reduced rate and demand their vessel. The quartermaster calmly tells them that he has no control over her; and his chief clerk pleasantly adds that they can take the money or let it alone, as they please, but that is all they will get. The owners, finding that they cannot get out of the clutches of the Quartermaster’s Department, sell their vessel. Considering that they proceed from New York to Fortress Monroe, find a purchaser, make a bargain, and transfer the vessel within six days after receiving notice of the reduction, they may. be said to sell her immediately. They then do what any creditor would do under like circumstances — they get what money they can out of their delinquent debtor, give a receipt for the part which is paid to them, and bring an action for the balance.
What the error of these unfortunate owners was, which is to preclude them from recovering upon a cause of action so mani-foldly just, I do not comprehend. In some such cases the claimant has been defeated because he voluntarily allowed his vessel to remain in the service with knowledge of the Quartermaster General’s order; but here the owners were in haste to get her out. In some, the benefits arising from the *252 continued service, coupled with, tlie acceptance of the reduced rate, has been regarded as an estoppel in pais upon the owners; but these owners received none of this resulting- consideration, and, on the contrary, in six days had succeeded in cutting themselves loose from the peculiar benefits of the connection. Other cases seem to have turned on the receipts, they being-taken as evidence of acquiescence; but such evidence I take it is at best prima facie, and here there was the strongest dissent, while the receipts are only in full of the part alloived by the Quartermaster' General, expressing nothing that looks like release or compromise of the part unpaid. It is also intimated that the suit was not brought soon enough, and that the parties had slept on their rights; but the suit has been brought within the time prescribed by law, and sleeping- on a cause of action is but evidence toward establishing a compromise where an agreement to compromise is alleged and in dispute. Here no such agreement is alleged nor pretended.
The case stands thus: The claimants entered into an agreement and performed all that it required of them; the defendants entered into an agreement and violated it. The claimants never consented to the breach nor waived the forfeiture, nor received any advantage from the contract after the violation was known to them. The defendants never restored to the claimants their property nor discharged their indebtedness for the use of it, nor procured any release for the balance left unpaid. Why the claimants should not recover I do not know; why the defendants should succeed I cannot understand.
PECK, J., did not sit in this case and took no part in the decision.